# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

**G&G CLOSED CIRCUIT EVENTS, LLC,**

    *Plaintiff*,

v.   Case No. SA-23-CV-1264-JKP

**RANCHO 181, LLC, et al.,**

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion for Summary Judgment (ECF No. 23). To date, Defendants have filed no response to the summary judgment motion and the time for doing so has passed.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted). Once the movant has carried its summary judgment burden, the burden shifts to the non-movant to establish a genuine dispute of material fact.

It is well-established that courts do not grant a default summary judgment merely because the motion elicited no response. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995) ("The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed."); *Simmons v. Vanguard Res. Inc.*, No. 5:19-CV-0848-JKP, 2020 WL

4738949, at *2 (W.D. Tex. Aug. 14, 2020). Indeed, Fed. R. Civ. P. 56(e) sets out various discretionary options that courts may utilize when any party "fails to properly address another party's assertion of fact as required by Rule 56(c)," including (2) considering "the fact undisputed for purposes of the motion" or (3) granting "summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."

Through its motion for summary judgment, Plaintiff seeks summary judgment against Defendants Rancho 181, LLC ("the LLC"); Victor Galvan; and Erik Reyes, individually and doing business as Rancho 181. This case concerns a pay-per-view boxing match ("the Event") originating via satellite and shown at Rancho 181 located at 13514 Highway 181 North; San Antonio, Texas; 78223 ("the Establishment").  Plaintiff was the exclusive domestic licensor of the Event.

Plaintiff sues Defendants for satellite piracy in violation of the Federal Communications Act ("FCA"), 47 U.S.C. § 605. "The FCA, a strict liability statute, prohibits the unauthorized interception and broadcast of satellite or cable transmissions." *Joe Hand Promotions, Inc. v. Allure Jazz & Cigars, LLC*, No. 3:22-CV-514-E (BK), 2025 WL 1737802, at *2 (N.D. Tex. May 27, 2025) (recommendation of Mag. J.) *accepted by* 2025 WL 1737322 (N.D. Tex. June 23, 2025). To establish liability under § 605, Plaintiff must prove that (1) "the Event was shown in Defendants' commercial Establishment" (2) without authorization. *J & J Sports Prods., Inc. v. Q Cafe, Inc.*, No. 3:10-CV-02006-L, 2012 WL 215282, at *3 (N.D. Tex. Jan. 25, 2012). Plaintiff has provided uncontested evidence of both elements.

Plaintiff seeks to hold the individual defendants vicariously liable for the § 605 violation. For courts that accept vicarious liability in this context, the Plaintiff must show that the individual defendants "(a) had a right and ability to supervise the infringing activities, and (b) an obvious and direct financial interest in the exploitation." *Id*. at *4. Plaintiff has presented uncontested evidence as to these matters.

2

Plaintiff also seeks to hold the individual defendants strictly liable as liquor license holders. Plaintiff contends that because "Defendants were the owners of the Establishment and Defendant Rancho 181, LLC was the owner of the alcohol license for the Establishment on the night of the Event, Defendants are responsible for the exhibition of the Event in the Establishment." The holder of a liquor license is "responsible for all portions" of the premises, including the televisions, and for the actions of all of the . . . employees." *Joe Hand Promotions, Inc. v. Roberson Mgmt., Inc.*, No. CIV A. H-05-3797, 2006 WL 2346308, at *1 (S.D. Tex. Aug. 11, 2006). The holder of a liquor license for an establishment is "responsible for the illegal exhibition of the Event" at the Establishment. *Joe Hand Promotions, Inc. v. 152 Bronx, LP*, 11 F. Supp. 3d 747, 754 (S.D. Tex. 2014). Plaintiff has provided uncontested evidence that the owner of the liquor license is Rancho 181 LLC with the individual defendants acting as managers and members of the LLC. The cited cases establish liability for the LLC due to the liquor license. But ownership of the LLC does not make the individual defendants liable based upon the LLC holding the liquor license.

Plaintiff makes no attempt to obtain summary judgment against the individual defendants on grounds that they are individually liable as assisting third parties. Thus, liability of the individual defendants stands or falls with the vicarious liability concept. There is some disagreement as to whether vicarious liability applies in the context of the FCA. *See J & J Sports Prods. Inc. v. Richard*, No. 18-CV-3133, 2019 WL 10784422, at *2 (N.D. Ill. Jan. 29, 2019) (recognizing disagreement). As stated in that case, "LLCs have a separate existence from their individual members." *See id*. And like that case, Plaintiff here offers "no evidence that [the two LLC members] did not honor the LLC's separate existence" and nothing about the fact that the two individual defendants are the sole members "of the LLC suggests a failure to observe corporate formalities." *See id*. But under such facts and with express recognition that LLCs are separate from their members, the court in *Richard* ultimately concluded that vicarious liability "can be used to impose liability" under the

3

FCA. *Id*. at *3. Although Plaintiff presents no binding authority for applying vicarious liability in the FCA context, Plaintiff cites to numerous federal Texas decisions that have done so. Absent persuasive authority to the contrary, this Court has no reason to decide otherwise currently. Given the uncontested evidence, Plaintiff has established that the individual defendants are vicariously liable for the § 605 violation.

Through uncontested summary judgment evidence, Plaintiff has shown a violation of § 605 and liability for each of the defendants. The next step is to consider Plaintiff's requested damages. Plaintiff has elected to seek statutory damages and asks for $10,000 for Defendants' violation of § 605. It provides evidence that had Defendants legally obtained the commercial license for the boxing match in question, they would have paid $1,434.50. It further provides evidence of unspecified damages for loss of goodwill and reputation. Because Defendants' actions were willful, it also seeks additional damages in the amount of $50,000. In addition, it seeks costs and attorney fees.

The FCA allows the recovery of statutory damages of "not less than $1,000 or more than $10,000, as the court considers just," for a violation of § 605. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II). And, under § 605(e)(3)(C)(ii), if the Court "finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain," it "in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation." Further, § 605(e)(3)(B)(iii) mandates that courts award full costs, including reasonable attorneys' fees, to a prevailing aggrieved party.

Plaintiff has not requested a hearing to determine damages, and this Court finds no basis to conduct one. *See Allure Jazz*, 2025 WL 1737802, at *4 (not conducting a hearing in similar circumstances). To determine statutory damages under § 605, "courts have developed two approaches." *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008). One

4

"is to award damages based on the number of patrons in the establishment at the time of the violation, and the second is to award a flat sum for damages." *Id*. "Some courts award a flat sum that accounts for broader economic costs." *Joe Hand Promotions, Inc. v. Pistoleros del Adobe Horse Shoe Cantina & Grill LLC*, No. EP-23-CV-419-KC, 2024 WL 4376121, at *3 (W.D. Tex. Sept. 25, 2024) (citation and internal quotation marks omitted). An award based on the number of patrons may simply focus on the number or the award may be based "on the licensing fee, which hinges on the establishment's seating capacity." *Id*. The purpose of each approach is "to deter defendants from future violations." *Id*.

The Court finds the first approach just and reasonable. "Because it appears to be most common approach in the Fifth Circuit and is susceptible to mathematical calculation, the Court awards damages based on the licensing fee." *Id*. Typically, the licensing fee is merely "a baseline for damages," and although courts often triple that baseline, a lesser increase may be sufficient. *Id*. When deciding whether to increase and by how much, courts consider the number of patrons, profits from food and drink sales, and profits from an entry fee, if any. *Id*. Courts may also consider the number of televisions broadcasting the Event and whether the Establishment is located "in a relatively urban city where the broadcast would have more than a minimal impact." *152 Bronx*, 11 F. Supp. 3d at 756.

For the venue at issue in this case, Defendants would have paid $1,434.50 to legally show the fight based on the Establishment's seating capacity. That is the baseline for damages. The summary judgment evidence shows that 200 patrons were at the Establishment during the Event, which was broadcast on approximately twenty-five flat-screen, 57" televisions. Plaintiff's auditor conducted a single head of the patrons. There is no evidence of any entry fee. To the contrary, submitted evidence shows that Rancho 181 advertised the Event (as well as a live band) as free on social media and Plaintiff's auditor averred that he did not pay a cover charge to enter. He further

averred that there were "multiple food trucks with tents and picnic tables" at the outdoor event. Submitted photos of the Event shows patrons with drinks and standing in line to purchase food and/or drinks. The photos show numerous patrons at the venue.

While there is evidence that patrons were eating and drinking, there is no indication as to how much profit the Establishment made from food and drink sales. Further, the profit factor is complicated by the fact that the Establishment provided space for food trucks and Plaintiff provides no evidence as to how the Establishment profited from food or drink purchases. Still, given the number of patrons, the Court finds that Defendants did earn profits from food and drink sales.

Given the deterrence purposes and the number of televisions and patrons at an advertised event in an urban area, the Court finds it just to treble what would have been the cost had Defendants followed the law. It further finds that rounding that figure up slightly is also just and reasonable. Accordingly, the Court will award statutory damages in the amount of $4,500. A treble amount "accounts for the money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers who stayed and watched the fight." *Garcia*, 546 F. Supp. 2d at 386. It also factors in other less calculable damages to Plaintiff.

Plaintiff has shown that Defendants violated § 605 willfully and for purposes of direct or indirect commercial advantage. When determining whether to increase the statutory damages and by how much, courts consider several factors, including whether the defendants (1) repeatedly violated the statute "over an extended period of time," (2) made "substantial monetary gains," (3) advertised the broadcast, and (4) charged "an admission fee" or increased prices "for food and drinks." *Aguirre*, 2025 WL 2182466, at *4 (citation and internal quotation marks omitted). An increase to the statutory damages, furthermore, "should not be so high that it drives a company out of business." *Id*.

Under the uncontested facts in this case, the Court finds that an increase in statutory

damages is warranted. In general, courts may reasonably "increase an actual or statutory damages award by a multiplier to penalize Defendants for willful acts." *Joe Hand Promotions, Inc. v. Umana Fam., Inc.*, No. 4:24-CV-544, 2025 WL 1908570, at *6 (S.D. Tex. June 20, 2025) (recommendation of Mag. J.) *adopted by* 2025 WL 1908566 (S.D. Tex. July 10, 2025). "To deter pirating of cable and satellite broadcasts, court have awarded in damages multipliers of three to eight (3 to 8) times the statutory damages as additional damages." *Q Cafe*, 2012 WL 215282, at *5. This Court finds the use of such multipliers reasonable and just. Such multipliers set a range between $13,500 and $36,000 in this case. Plaintiff seeks $50,000 in additional damages, which is a five-time multiplier of the maximum statutory damages under § 605(e)(3)(C)(i)(II). Given the location of the Establishment in a large urban city with the advertised Event being broadcast on numerous large screen televisions to two hundred patrons, the § 605 violation had more than a minimal impact and warrants the five-time multiplier. The Court will thus increase the statutory damages by $22,500 for total statutory damages of $27,000.

Plaintiff seeks costs and fees in an amount equal to "one third of the actual and additional damages awarded." To support its fee request, it provides a declaration from its attorney, David M. Diaz, who opines "that a one third (33 1/3%) contingent fee is reasonable for the prosecution of this cause through judgment." Such a fee calculates to $9,000 given the damages assessed herein. Alternatively, it provides sufficient information to conduct the lodestar calculation, and doing so, results in a fee of $3,600.

With respect to attorney fees, federal courts may use a contingency fee calculation method or the lodestar method. *See G&G Closed Cir. Events, LLC v. Aguirre*, No. 5:23-CV-01265-XR-RBF, 2025 WL 2182466, at *5 (W.D. Tex. Mar. 13, 2025) (recommendation of Mag. J.) *adopted by* 2025 WL 2182457 (W.D. Tex. Mar. 28, 2025). The contingency fee method "is frequently the measure of attorney's fees used in Communications Act cases by federal courts in Texas." *J & J*

7

*Sports Prods., Inc. v. Casita Guanajuato, Inc.*, No. A-13-CA-824-SS, 2014 WL 1092177, at *3 (W.D. Tex. Mar. 19, 2014). Because no defendant has responded to the summary judgment motion or voiced any objection to the contingency fee method, the Court applies that method. Both methods provide an acceptable means to assess reasonable fees, and the Court finds $9,000 to be reasonable under the circumstances. "The Court declines to make a contingent award for post-judgment or appellate attorney's fees, but will entertain such a request if it becomes necessary in the future." *See id*.

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (ECF No. 23). Plaintiff is entitled to judgment as a matter of law on his claim brought under the Federal Communications Act, 47 U.S.C. § 605. Defendants Rancho 181, LLC; Victor Galvan; and Erik Reyes are jointly and severally liable for the § 605 violation. Plaintiff is entitled to statutory damages of $4,500, which the Court in its discretion increases by $22,500 for total statutory damages of $27,000. The Court finds $9,000 for attorneys' fees to be reasonable under the circumstances. Contemporaneously with this order, the Court will enter Final Judgment as to the amount of damages; award costs and attorneys' fees to Plaintiff, and award post-judgment interest at the legal rate prescribed by 28 U.S.C. § 1961, calculated from the date of the Final Judgment. Upon the entry of Final Judgment, the Court directs the Clerk of Court to close this case for all purposes.

**IT IS SO ORDERED this 18th day of August 2025.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**